IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiffs,<br><br>vs.<br><br>JOSHUA Z. DORTCH,<br><br>        Defendants. | **4:18CR3034**<br><br>**FINDINGS, RECOMMENDATION, AND ORDER** |

    Defendant has moved the court for an order "suppressing any and all evidence derived from the unlawful arrest of the defendant on March 23, 2018 as said arrest violated his rights under the 4th Amendment." (Filing No. 73). Defendant argues the officers lacked probable cause to arrest him. In his post-hearing brief, Defendant further argues that prior to the arrest, he was illegally detained without reasonable suspicion. Defendant asserts any evidence arising from the detention and arrest must be suppressed as fruit of these Fourth Amendment violations.

    For the reasons discussed below, the motion to suppress should be denied.

STATEMENT OF FACTS

    Beginning at least as early as June of 2017, John Justin Armstrong, a Sergeant for the Lincoln Police Department, was investigating a series of robberies occurring in Lincoln, Nebraska. Defendant Joshua Dortch became a suspect for these robberies. Dortch was arrested for a jewelry store robbery in 2017. Although that charge was ultimately dismissed, as a result of his investigative efforts, Sergeant Armstrong became acquainted with and able to recognize Defendant Dortch, and he received information from the Omaha Police Department indicating Dortch was associated with Anwar Hunt, his co-defendant in the above-captioned case.

A jewelry store at the Gateway Mall in Lincoln, Nebraska was robbed on February 15, 2018. Based on video surveillance, a black Dodge Ram pickup was identified as the vehicle used for transport to and from that robbery. Sergeant Armstrong conducted follow up investigation and found the black Dodge Ram vehicle parked in front of Hunt's residence. He ran the license plates for that vehicle and discovered it was owned by Enterprise Car Rental. Through contacts with the rental agency, he learned the vehicle was rented by Jamia Peak.

During the first week of March 2018, the Enterprise rental agency contacted Sergeant Armstrong and reported that Jamia Peak had returned the Dodge Ram pickup and then rented a black Jeep Cherokee. Enterprise provided the license plate number for the Jeep Cherokee.

At 1:16 p.m. on March 23, 2018, Sergeant Armstrong heard a radio dispatch announcing a robbery at a Sartor Hamann jewelry store located near 27th Street and Pine Lake Road (the Southpointe Pavilion area) in Lincoln, Nebraska. Sergeant Armstrong was at the police headquarters in downtown Lincoln when he heard the call. He immediately went to his vehicle and began driving south toward the Southpointe Pavilion area (a 10- to 15-minute drive) to assist.

As he was driving to the robbery scene, dispatch reported the robbery suspects were described as two black men wearing construction vests and driving a red car. Dispatch further reported that Rolex watches had been stolen, and one of those watches was equipped with a GPS tracking device. Using this tracking device, Sartor Harmann was monitoring the location of the stolen property and continuously apprising dispatch of its movement. Dispatch, in turn, conveyed this information to the officers, including Sergeant Armstrong, who were responding to the robbery. The GPS signal stopped moving at the east edge of an apartment complex approximately two miles north of the Sartor Hamann store. Upon hearing the reports from dispatch, Sergeant Armstrong headed to the apartment complex instead of the robbery scene.

Based on the tracking device signal, the stolen property was located behind a garage near the intersection of Carnelian Street and Serenity Circle in Lincoln, Nebraska. Sergeant Armstrong entered the area from the west, driving down Carnelian Street.

As he passed the 3300 block of Carnelian, he noticed a black male (later identified as Dortch) sitting on the front entry step of building at 3310 Carnelian Street.



He continued down the street and noticed a black Jeep Cherokee parked 150-200 feet from the GPS-signaled location of the stolen property. The license plates on the black Jeep matched the plate number for the Jeep Cherokee rented from Enterprise by Jamia Peak. The black Jeep was running, with headlights on, and it was parked facing west and approximately 600 feet from the black male at the apartment building entrance.

Sergeant Armstrong passed the black Jeep, made a U-turn, passed the black Jeep again, and then parked his vehicle facing west on the north side of Carnelian Street and between the black Jeep and the as yet unidentified black male. From that vantage point, he could look to the front and see the black male, and he could see the black Jeep Cherokee in his rear-view mirror.

3

Although Dortch had noticed only three law enforcement officers in the area, there were several marked and unmarked police vehicles in the vicinity, and the police had set up a perimeter to monitor traffic entering and leaving that community. Sergeant Armstrong noticed the black male walk toward a female and borrow her cell phone. Based on his prior law enforcement experience, he suspected the black male was trying to call someone for transportation out of the area.

Sergeant Armstrong announced on the radio that law enforcement needed to contact the black male at the apartment entrance. Sergeant Armstrong began driving closer to the black male's location. As he did so, he heard a radio communication stating Anwar Hunt, also a black male and a known associate of Dortch, was found walking on the north side of Highway 2 about five to six blocks away. Based on the cumulative information, Sergeant Armstrong believed the black male at the apartment entrance step was Defendant Dortch.

In response to Sergeant Armstrong's directive to contact the black male, Lincoln Police Officer John Brandl approached from the south, parked his vehicle in front of the apartment building, and walked toward the black male, who was holding a roll of paper towels and a garbage bag. Based on Sergeant Armstrong's directive, Officer Brandl believed the black male was a suspect in an armed robbery. The officer asked for his name or identification, and asked if he lived in the building, and why he was carrying paper towels. The black male refused to respond and moved to walk away. Officer Brandl grabbed the black male's arm and began to handcuff him. As he did so, Sergeant Armstrong approached on foot, and when he was 10- to 15-feet away, he was able to identify the black male as Defendant Dortch.

Sergeant Armstrong advised Dortch that he was under arrest. Dortch, now in handcuffs, was pat searched and then escorted to Brandl's patrol vehicle. To assure that Dortch could not contact others involved in the robbery, Dortch's cell phone was removed from Dortch's pocket before he was placed in the rear seat of the patrol vehicle. Brandl immediately transported Dortch to the jail.

ANALYSIS

Dortch claims the officers lacked reasonable suspicion to detain him prior to his arrest, and they lacked probable cause to arrest him.

However, "[n]ot all personal intercourse between policemen and citizens involves 'seizures' of persons" implicating the Fourth Amendment. Terry v. Ohio, 399 U.S. 1, 19 n.16 (1968). "Only when the officer, by means of physical force or show of authority, has restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Id. There is no bright line between a consensual encounter and a seizure. Rather, the determination is fact-intensive and turns upon the unique facts of each case. United States v. Hathcock, 103 F.3d 715, 718 (8th Cir. 1997), cert. denied, 117 S. Ct. 2528 (1997); United States v. McKines, 933 F.2d 1412, 1419 (8th Cir. 1991) (en banc), cert. denied, 502 U.S. 985 (1991).

Even when an officer has no reason to suspect the individual is involved in criminal activity, "[a] seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions. . . provided the officer does not indicate that compliance with his request is required." United States v. White, 81 F.3d 775, 779 (8th Cir. 1996). See also, U.S. v. Olivera-Mendez, 484 F.3d 505, 511 (8th Cir. 2007) ("Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention."). Instead, the transformation of a consensual encounter into a seizure occurs only "when the questioning is so 'intimidating, threatening or coercive that a reasonable person would not have believed himself free to leave.'" Hathcock, 103 F.3d at 718 (quoting McKines, 933 F.2d at 1419). Circumstances indicative of a seizure include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" United States v. Angell, 11 F.3d 806, 809 (8th Cir. 1993) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)); Hathcock, 103 F.3d at 718; White, 81 F.3d at 779.

5

Here, Brandl's act of walking toward Dortch and asking for his identification, if he lived in the complex, and why he was carrying paper towels, was not a seizure. Clearly Brandl's conduct did not intimidate, coerce, or compel Dortch's compliance: Dortch refused to answer Brandl's questions and began to walk away.

As Dortch moved to leave, Brandl stopped him and began to place him in handcuffs. At that point, Brandl was unquestionably detained. Contacts with law enforcement are no longer consensual and become a detention when, in light of all the circumstances surrounding the incident, a reasonable person would not believe he or she was free to go. U.S. v. Drinkard, 900 F.2d 140, 142 (8th Cir. 1990). However, "[a] police officer 'may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.' " United States v. Collins, 883 F.3d 1029, 1031–32 (8th Cir. 2018) (citing United States v. Fields, 832 F.3d 831, 834 (8th Cir. 2016) (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). The Fourth Amendment is not violated when an officer who reasonably suspects criminal wrongdoing detains a suspect for a reasonable period of time to question the defendant, investigate the circumstances, and determine whether the person has been involved in illegal activity. United States v. Hensley, 469 U.S. 221, 227 (1985) ("[A] n officer may stop and question a person if there are reasonable grounds to believe that person is wanted for past criminal conduct.") U.S. v. Ortiz-Monroy, 332 F.3d 525, 528 (8th Cir. 2003).

The court considers the totality of the circumstances when determining whether an officer has a particularized and objective basis to suspect wrongdoing, allowing "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Collins, 883 F.3d 1029, 1032 (8th Cir. 2018). "When a team of law enforcement officers is involved in an investigation, the issue is whether all the information known to the team provided 'specific and articulable facts which, taken

6

together with rational inferences from those facts, reasonably warrant' the investigative stop." Id. (quoting U.S. v. Winters, 491 F.3d 918, 921 (8th Cir. 2007)).

Under the totality of the circumstances presented in this case, the officers collectively knew that a Sartor Hamann jewelry store located only two miles from the apartment complex was robbed by two black males; Dortch and Hunt, both black males and known associates, were suspects in robberies that occurred in Lincoln over the last twelve months; no more than 20 minutes after the Sartor Hamann store was robbed, officers saw a black male located 600 feet or less from the GPS-signaled location of the stolen property and a black Jeep Cherokee was parked running with its headlights still on, approximately 200 feet from the likely location of the stolen property; the black Jeep Cherokee was rented by the same person who rented a vehicle used to rob another jewelry store in Lincoln five weeks earlier; and Hunt was contacted only six blocks away, walking along Highway 2.

Under the totality of circumstances presented, based on the officers' collective knowledge, there was not only reasonable suspicion, but probable cause to believe the black male Brandl approached and detained at the apartment complex was involved in the Sartor Hamann robbery.[1] That belief was further confirmed when Sergeant Armstrong arrived and visually identified Dortch—only seconds after Brandl stopped Dortch's movement and began applying handcuffs. U.S. v. Jones, 535 F.3d 886, 890–91 (8th Cir. 2008) ("A reasonable officer knowing of the location and time of the robbery, the direction the suspect traveled after the robbery, and the suspect's updated description would have

---

[1] Dortch appears to argue that reasonable suspicion and probable cause did not exist because the Sartor Hamann robbery was committed by two people wearing safety vests and driving a red car. The court is not convinced. Safety vests are designed to be bright and conspicuous, worn over underlying clothing, and easy to take on and off. The fact that robbers would remove such vests following a crime is of no surprise to the court. Moreover, the absence—or even the presence—of a nondescript red car is likely less telling than the presence of the specific black Jeep Cherokee rented by the same person who rented the vehicle used in a prior Lincoln jewelry store robbery.

cause to conclude there was a 'substantial chance' [defendant] had recently committed a criminal act" sufficient to establish probable cause) (internal quotation omitted); See also, United States v. Oakley, 153 F.3d 696, 697–98 (8th Cir. 1998) (affirming probable cause to arrest a robbery suspect who matched the eyewitness description, located less than an hour after the bank robbery and within 12 blocks of the bank).

The Sartor Hamann theft was reported as a robbery—indicating a weapon was used. Brandl pat searched Dortch for officer safety. Officers are "authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain the status quo" during a detention or arrest. U.S. v. Hensley, 469 U.S. 221, 235 (1985). The pat search of Dortch did not violate his Fourth Amendment rights. See, United States v. Abokhai, 829 F.2d 666, 670–71 (8th Cir. 1987) (upholding a frisk to assure officer safety prior to placing the suspect in the rear of the patrol car).

After Dortch was handcuffed and arrested, and before he was placed in Brandl's patrol vehicle, the officers removed a cell phone from Dortch's pocket. They did not look at the content of the cell phone, but merely eliminated Dortch's access to it during transport to the jail. Confiscating the cell phone clearly did not violate Dortch's Fourth Amendment rights. Riley v. California, 134 S.Ct. 2473, 2493 (2014) (stating that although the warrant requirement remains intact for searches of actual cell phone data, officers may freely seize and secure a cell phone incident to arrest).

Accordingly,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 73) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, Chief United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on **January 22, 2019**, or as soon thereafter as the case may be called, for a duration of three (3) trial days. Jury selection will be held at the commencement of trial.

November 21, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge